IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:07CV129-V

| | |
|---|---|
| CHRIS R. LANIER, )<br>     Plaintiff, )<br>)<br>v. )<br>)<br>STATE FARM FIRE AND CASUALTY )<br>COMPANY, )<br>     Defendant. )<br>_____) | **Memorandum and Order** |

**THIS MATTER** is before the Court on a Motion for Summary Judgment filed by Defendant State Farm Fire and Casualty Company ("State Farm") on October 1, 2008. (Documents ##11-12)

## I. Background & Procedural History

Plaintiff Chris R. Lanier ("Lanier") owned real property in Statesville, Iredell County, North Carolina. Plaintiff contracted with Defendant State Farm for homeowners' insurance. (Exh. E / Policy No.: 33-GB-4003-1) On February 15, 2004, Lanier's home was destroyed by fire. On April 23, 2004, Lanier filed a claim with State Farm to recover under the insurance policy for damage to the structure as well as personal property loss.

State Farm began an investigation of Lanier's insurance claim by retaining cause and origin experts Valentine & Associates. Jeff Sellers ("Sellers") of Valentine & Associates conducted a fire investigation on February 20, 2009, which included an analysis of chemical samples from various rooms in the house. Chemical analyses revealed the presence of accelerants throughout the house. Valentine & Associates ultimately opined that the fire was incendiary in nature as opposed to accidental.

The information uncovered during State Farm's investigation was shared with the Iredell County Sheriff's Department. A criminal investigation was initiated and criminal charges were brought against Lanier.[1] Sue Cass, who was living with Lanier at the time of the fire, was also charged. Ms. Cass eventually pled guilty to arson and insurance fraud.

State Farm continued its investigation by taking recorded statements of Plaintiff, Ms. Cass, and Stacey Sidden ("Sidden"), a friend of Ms. Cass's. During the investigation, Ms. Cass indicated that Lanier asked her to burn his home in exchange for paying her a portion of the insurance proceeds. Ms. Cass also advised authorities that she assisted Lanier in preparing his personal property inventory forms ("PPIFs"), which allegedly contained false information. Ms. Sidden's statements to authorities corroborate those given by Ms. Cass.

On May 25, 2004, State Farm undertook an examination under oath ("EUO") of Plaintiff Lanier pursuant to the terms of the insurance policy. Lanier denied involvement in the intentional setting of the fire. However, Lanier admitted to experiencing financial difficulty and discussed a previous insurance claim under the policy whereby he collected $40,000 in insurance proceeds. Lanier admitted that Ms. Cass filled out the PPIFs for him although he signed each indicating that the claim was true and accurate.

On November 2, 2004, State Farm denied Lanier's claim based upon its investigation and belief that (1) the fire was intentionally set; (2) Lanier was involved with starting the fire; and (3) Lanier made material misrepresentations during the claim process. Although State Farm ultimately denied Lanier's claim, during its pendency, State Farm paid Plaintiff $3,000.00 for additional living

---

[1] The specific offenses brought against Lanier and the current status of the criminal charges are not part of the current record.

expenses under the terms of the policy.

On October 30, 2007, Plaintiff initiated this action in Iredell County Superior Court. Plaintiff alleged two claims: breach of contract and bad faith denial or breach of the covenant of good faith and fair dealing. On November 29, 2007, Defendant removed the case based upon diversity jurisdiction. State Farm filed its Answer and Affirmative Defenses on December 20, 2007.

On October 1, 2008, State Farm moved for summary judgment.[2] Plaintiff did not respond to the summary judgment motion until issuance of a Show Cause Order by the Court on March 3, 2009.[3] In light of Plaintiff's failure to defend against Defendant's dispositive motions, Lanier was directed to show cause why this civil action should not be dismissed in its entirety for lack of prosecution pursuant to F<small>ED</small>. R. C<small>IV</small>. P. 41(b). Plaintiff was also specifically asked to address the imposition of sanctions against Plaintiff, Plaintiff's Counsel, or both.

On March 20, 2009, Lanier submitted two filings to the Court, "Plaintiff's Memorandum In Response To Defendant's Motion For Summary Judgment," and another filing entitled "Written Explanation As To Why Plaintiff's Action Should Not Be Dismissed." (Documents ##15,16) Plaintiff's memorandum in response to summary judgment only deals with State Farm's statute of limitations defense and does <u>not</u> address Defendant's alternative legal arguments in support of summary judgment.

---

[2] The parties attended a mediation on November 4, 2008, but reached an impasse. (Document #14)

[3] Prior to moving for summary judgment, State Farm sought judgment on the pleadings. (Documents ##7,8) Plaintiff Lanier did not respond to that dispositive motion either, which has since been rendered <u>moot</u>.

## II. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In conducting its analysis, the Court views the evidence in the light most favorable to the non-moving party. Celotex Corp., 477 U.S. at 325.

According to the Supreme Court, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we [the court] think it should be interpreted in a way that allows it to accomplish this purpose." Celotex Corp., 477 U.S. at 323-324 (Rule 56 does not require that the moving party support its motion with affidavits negating the opponent's claims); *See also* Cray Comm'ns, Inc. v. Novatel Computer Syss., Inc., 33 F.3d 390, 393-395 (4th Cir. 1994).

## III. Applicable Law & Discussion[4]

### A. Statute of Limitations As A Bar To Plaintiff's Claims

The statute of limitations analysis is the same for both of Plaintiff's claims. In North Carolina, a cause of action for breach of contract must be brought within three years of the alleged breach. *See* N.C. GEN. STAT. § 1-52(1). An insurance policy is a contract and is thus subject to a three-year

---

[4] The parties appear to agree that the legal issues presented are governed by North Carolina law. (Pl.'s Resp. at 2-3; Def.'s Mem. In Supp. at 5)

statute of limitations. *See* <u>Fidelity Bankers Life Ins. v. Dortch</u>, 348 S.E.2d 794, 796 (1986); N.C. Gen. Stat. § 1-52(12)[5]. Because Plaintiff's bad faith denial claim also arises out of contract, it is likewise subject to a three-year statute of limitations. *See* N.C. Gen. Stat. § 1-52(12); <u>Page v. Lexington Ins. Co.</u>, 628 S.E.2d 427, 430 (2006).

The statute of limitations begins to run upon the "inception of the loss." In this case, the parties agree that the phrase "inception of the loss" refers to the date of the occurrence of the event out of which the claim arises – *i.e.*, the date of the fire. *See* <u>Marshburn v. Assoc. Indem. Corp.</u>, 353 S.E.2d 123, 126 (1987) (*citations omitted*). Similarly, Plaintiff's bad faith claim is triggered by the date of Plaintiff's actual loss. *See* <u>Page</u>, 628 S.E.2d at 430. Thus, it is undisputed that the limitations period for both of Plaintiff's causes of action began on February 15, 2004. Plaintiff's insurance claim was submitted on April 23, 2004. State Farm notified Lanier of its denial of his claim on November 2, 2004. (Compl. ¶13; Exh. B at 10-11) Lanier filed the instant lawsuit on October 30, 2007, more than three years after the fire. Therefore, absent a tolling of the statutory limitations period, Plaintiff's cause of action is barred.

Although Plaintiff fails to cite any specific policy language, he argues that the provisions within the insurance policy that postpone the insured's right to sue (*i.e.*, presumably requiring that plaintiff submit proof of loss to State Farm within sixty days, and that no lawsuit be commenced within ninety days from receipt of the proof of loss) effectively provide Plaintiff with an enlargement of the limitations period – three years plus the postponement period. In other words, Plaintiff

---

[5] Pursuant to §1-52(12), a three-year statute of limitations applies to "a claim for loss covered by an insurance policy which is subject to the three-year limitation contained in lines 158 through 171 of the Standard Fire Insurance Policy for North Carolina." N.C. Gen. Stat. § 1-52(12). Lines 158 through 171 refers to an earlier version of The Standard Fire Insurance Policy which only provided for a twelve month limitations period after inception of the loss. *See* N.C. Gen. Stat. § 58-44-15(c).

5

contends that the statute was tolled between the filing of his proof of loss on April 23, 2004, and State Farm's denial of his claim on November 2, 2004.

Paragraph 2(g) within "SECTION I - YOUR PROPERTY, SECTION I - CONDITIONS," entitled "Your Duties After Loss," reads in pertinent part:

"Send to us, *within 60 days after our request*, your signed, sworn proof of loss . . . ."

(Policy at 11, ¶2(g)) Paragraph 8 entitled "Suit Against Us," reads:

> ***No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.***

(Policy at 13, ¶8) Paragraph 10 on "Loss Payment," states:

"Loss will be payable *60 days after we receive your proof of loss* and:

a. Reach an agreement with you;
b. There is an entry of a final judgment; or
c. There is a filing of an appraisal award with us.

(Policy at 13, ¶10) Thus, prior to initiating a lawsuit, all of the policy provisions must "have been complied with." Id. Although the statement is written in past tense, whether this language requires Plaintiff to delay the filing of a lawsuit until the loss is actually payable – which necessarily takes several months (*i.e.*, a minimum of 60 days after proof of loss is submitted) after the filing of the insurance claim – depends upon interpretation of the contract.

In addition, under the *policy*, the insured only has "one year after the date of loss" to start the action. Id. This portion of the contract is contrary to N.C. Gen. Stat. § 1-52(1), which gives the insured up to three years to sue. Under N.C. Gen. Stat. §58-3-35, a *contractual* limitations period (sometimes called a "private statute of limitations") becomes void to the extent it attempts to shorten the applicable statutory limitations period for commencing an action. Thus, if a fire insurance policy only allows the insured one year from the inception of loss to commence suit, and the statute allows

three years, the three-year time period controls. *See e.g.*, 3 LAW AND PRAC. of INS. COVERAGE LITIG. §43:21 ("In some states, a policy that does not contain a statutorily mandated limitation provision will be reformed to conform to the statute . . . .")  The parties seem to agree on this principle.

However, it is not at all clear that tolling the limitations period is appropriate under these facts. Plaintiff contends that construing the policy language and statute as suggested by Defendant would impermissibly shorten the three-year statute of limitations by six months.[6] According to Plaintiff, "North Carolina is among the jurisdictions which construe a clause postponing suit in conjunction with a clause establishing a period of limitations so as to postpone the running of the period of limitations." Carter v. Georgia Life and Health Ins. Co., 233 S.E.2d 65, 66 (N.C.App. 1977) (noting split of authority on whether clauses which postpone the right to sue also postpone the date from which a period of limitations runs) (*citing* Heilig v. Ins. Co., 67 S.E. 927 (1910)). However, the Carter decision cited by Lanier did not involve a fire insurance policy, and is not controlling. *See* Carter, 233 S.E.2d at 66 (affirming summary judgment in favor of defendant in suit to recover hospital room expenses where plaintiff could not establish a triable issue of fact regarding limitations period). In Carter, the N.C. Court of Appeals analyzed different language from a different type of insurance contract altogether.[7] The insurance policy at issue here does not contain language

---

[6] Plaintiff's cause of action was filed nearly eight months after the three-year statute of limitations expired.

[7] In Carter, the policy contained the following language:

> Proofs of Loss. Written proof of loss must be furnished to the Company at its said office within ninety days after the termination of the period for which the Company is liable. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the

7

as strong as the immunity from suit provision in Carter. While the policy conditions commencement of an action upon compliance with the terms of the policy, the policy does not unequivocally prohibit the insured from bringing an action against it prior to final disposition of the insurance claim.[8] Indeed, a reasonable interpretation of the policy language requiring compliance could simply be that Plaintiff is following the claims procedures outlined within the policy, regardless of the stage within the claims process.

Pursuant to Marshburn, "[a] claim filed after the *contractual time limitation* has expired is barred, regardless of its merit, unless the insurer, by its conduct, waives or is estopped from relying upon the limitation provisions of the policy." Marshburn, 353 S.E.2d at 126 (*emphasis added*). The primary issue in Marshburn was when the actual loss was discoverable to the insured, and how the type of loss and discovery of the same affected the commencement of the limitations period. The Marshburn court held in effect that an insured's failure or inability to discover damage until after the contractual limitations period had run was immaterial and did not operate to toll or restart the limitations period. Id. at 127. Tolling of the statutory limitations period was not even discussed.

As explained in greater detail by the North Carolina Supreme Court, all fire insurance policies must adhere to the standards described within N.C. Gen. Stat. §58-44-15. *See* F & D Co. v. Aetna Ins. Co., 287 S.E.2d 867, 870 n. 2 (N.C. 1982) (fire insurance cases may be distinguished from cases

---

absence of legal capacity, later than one year from the time proof is otherwise required.
    Legal Actions. No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

Carter, 233 S.E.2d at 65-66.

[8] In other words, State Farm has not built in an immunitiy from suit period for itself to allow it to investigate the insurance claim.

affected by §58-31 because fire insurance policies are standardized and adopted by the legislature); Lloyd v. Grain Dealers Mutual Ins. Co., 2007 WL 1599087, *3 (2007) (fire insurance contract is valid and consistent with N.C. Gen. Stat. §§58-3-35[9] and 1-52(1)). If the North Carolina legislature intended for the statutory limitations period to be tolled during the entirety of the claims process to allow the insurer an opportunity to complete its investigation and render a final decision on the claim, either the standard policy form or governing statute would expressly provide for tolling. It has not seen fit to do so. Moreover, the undersigned notes that, absent tolling, Lanier had from January 4, 2005 (60 days after denial of the claim) through February 15, 2007 to commence his suit against State Farm. Plaintiff had ***more than two years*** following State Farm's denial of his claim to bring this civil action.

For all of these reasons, the Court finds that Plaintiff has not met his burden on the statute of limitations issue. *See* Little v. Rose, 208 S.E.2d 666, 668 (1974) (Once a defendant asserts a statute of limitations as a defense, the plaintiff bears the burden of showing that the action was instituted within the prescribed period.) Plaintiff's action is barred as untimely.

**B. Plaintiff Fails To Produce Evidence Establishing A Genuine Issue Of Material Fact Regarding His Breach of Contract & Bad Faith Claims**

Alternatively, the Court finds that Plaintiff's causes of action do not survive summary judgment. The insurance policy excludes from coverage intentional loss by or at the direction of an

---

[9] Section 58-3-35 reads in part:

(b) No insurer ... licensed under this Chapter shall limit the time within which any suit or action referred to in subsection (a) [any suit or action on the contract] of this section may be commenced to less than the period prescribed by law.

(c) All conditions and stipulations forbidden by this section are void.

9

"insured." (Policy at 10, ¶1h)  In addition, the Policy is void if an "insured" engages in concealment or fraud.[10]  (Policy at 20, ¶2a-c)   The record evidence tends to show that Lanier played a role in the intentional setting of the fire that destroyed his home and then made misrepresentations to State Farm during the insurance company's investigation in an effort to conceal his involvement.  Plaintiff produces exactly "zero" evidence to the contrary.[11]  Viewing the evidence in the light most favorable to the Plaintiff, there is no genuine issue of material fact to preclude judgment as a matter of law.  Plaintiff's claims are subject to dismissal pursuant to Rule 56.

---

[10] Paragraph 2 within "Sections I and II - Conditions," governs "Concealment and Fraud" and provides that:

"The entire policy will be void if, whether before or after a loss, an "insured" has:

a. Intentionally concealed or misrepresented any material fact or circumstances;
b. Engaged in fraudulent conduct; or
c. Made false statements relating to this insurance."

(Policy at 20, ¶2a-c)

[11] According to Defendant, Plaintiff did not notice or take any depositions during the discovery period. Rule 56(e) provides:
"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  ***When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him***."

FED. R. CIV. P. 56(e).

## IV.  Sanctions

Plaintiff's Show Cause response does <u>not</u> speak to the efficacy of sanctions. Incredibly, Plaintiff's counsel asserts that he "was not aware that it was necessary to file a response to Defendant's Motion for Summary Judgment because he believed that his Complaint set forth reasons as to why the Statute of Limitations had not run." (Document #16 / ¶¶6, 10)  Counsel suggests that the Federal Rules of Civil Procedure and local rules do not require a response. (<u>Id.</u> ¶10)  Finally, counsel claims that Lanier's "failure to file a response to defendant's motion for summary judgment was not willful," and, therefore, Plaintiff "should not be penalized due to his attorney's failure to file a response . . . ."  (<u>Id.</u> ¶10)

Under these facts, the Court finds that counsel for Plaintiff should be sanctioned for his lack of diligence in prosecuting this civil action on behalf of his client. Counsel shall be required to submit to the Court, via the Clerk of Court, a monetary sanction in the amount of **$200.00** on or before April 30, 2009.

## V.  Order

For the reasons stated in Defendant's motion, and within the instant Memorandum and Order,

**IT IS, THEREFORE, ORDERED THAT:**

1)  Defendant's Motion for Summary Judgment is hereby **GRANTED**;

2) Plaintiff's suit will not be involuntarily dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute; and

3) Plaintiff's counsel is hereby **SANCTIONED** in the amount of **$200.00**, payable to the Clerk of Court on or before April 30, 2009.

Signed: March 30, 2009

Richard L. Voorhees
United States District Judge